[Cite as *State v. Rogers*, 2020-Ohio-4102.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2019-11-194 |
| Appellee, | : | O P I N I O N<br>8/17/2020 |
| | : | |
| - vs - | : | |
| | : | |
| JAMES PATRICK ROGERS aka<br>JAMES P. RODGERS, | : | |
| | : | |
| Appellant. | | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CRI2019-08-1199

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael T. Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, OH 45011, for appellee

Michele Temmel, 6 South Second Street, Suite 305, Hamilton, OH, 45011, for appellant

**M. POWELL, J.**

{¶ 1}   Appellant, James Patrick Rogers, appeals his conviction and sentence in the Butler County Court of Common Pleas following his guilty plea to aggravated drug trafficking, having weapons while under disability, and cocaine possession.

{¶ 2}   Rogers was indicted in August 2019 on six felony offenses, including three felony drug offenses, and one misdemeanor offense.  All three felony drug offenses were

accompanied by firearm and forfeiture specifications.

{¶ 3} On October 31, 2019, pursuant to plea negotiations, Rogers agreed to plead guilty to one count of aggravated drug trafficking, a second-degree felony, along with a forfeiture specification (Count 2), one count of having weapons while under disability, a third-degree felony (Count 4), and one count of cocaine possession, amended to a fifth-degree felony (Count 6). In exchange for Rogers' guilty plea, the state dismissed three felony offenses, the misdemeanor offense, and the firearm specifications. The guilty plea and jury waiver form signed by Rogers plainly indicated that Rogers faced an optional driver's license suspension on Counts 2 and 6, a maximum fine and their respective amount on all three counts, and a mandatory fine of $7,500 on Count 2 as a result of pleading guilty.

{¶ 4} During the plea hearing, the trial court engaged Rogers in a Crim.R. 11 colloquy. The trial court advised Rogers that Count 2 carried an indefinite prison term with a minimum term from within the applicable sentencing range and a maximum term of an additional 50 percent of the minimum term imposed, Count 4 carried a definite mandatory 36-month prison term, and Count 6 carried a definite maximum 12-month prison term. Rogers indicated he understood the prison terms he faced on all three counts. The trial court advised Rogers it intended to impose a minimum prison term of four years on Count 2, which meant that the maximum prison term on that count would be six years, a consecutive 36-month prison term on Count 4, and a concurrent 12-month prison term on Count 6. The trial court explained that the longest minimum prison term Rogers was facing was thus seven years and the longest maximum prison term was nine years. Rogers indicated he understood.

{¶ 5} The trial court next reviewed the guilty plea and jury waiver form with Rogers. Specifically, the trial court asked Rogers whether he had signed the plea form, whether he had read it before signing it, and whether he understood it. Rogers replied affirmatively

each time.  The trial court then informed Rogers of the constitutional rights set forth in Crim.R. 11(C)(2)(c).  Rogers indicated he understood those rights.  He then proceeded to plead guilty on Counts 2, 4, and 6.  At no time during the plea colloquy did the trial court advise Rogers of the maximum fines, the $7,500 mandatory fine, or the potential license suspension he faced.

{¶ 6}  The matter proceeded immediately to sentencing.  At the beginning of the sentencing hearing, defense counsel advised the trial court that he had filed a motion to waive the $7,500 mandatory fine on Count 2 on the ground Rogers was indigent and unable to pay.  The record shows that the motion was filed on October 31, 2019, the day of the plea and sentencing hearings.  The trial court sentenced Rogers to prison on all three counts and imposed a mandatory fine of $7,500 on Count 2.  The trial court did not impose a license suspension.

{¶ 7}  Rogers now appeals, raising two assignments of error.

{¶ 8}  Assignment of Error No. 1:

{¶ 9}  MR. ROGERS['] PLEA WAS NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY MADE.

{¶ 10}  Rogers argues that he did not knowingly, intelligently, or voluntarily enter his guilty plea because the trial court failed to comply with Crim.R. 11(C)(2)(a) when it did not advise him of the mandatory fine on Count 2 during the plea colloquy.[1]

{¶ 11}  When a defendant enters a guilty plea in a felony criminal case, the plea must

---

1. Rogers also briefly argues that the trial court failed to advise him of the possible maximum fines on all three counts and the possible driver's license suspension on Counts 2 and 6.  Unlike the mandatory fine, however, those penalties were not imposed by the trial court.  Therefore, any issue relating to these unimposed components of the penalty are moot.  *See State v. Bostic*, 8th Dist. Cuyahoga No. 84842, 2005-Ohio-2184, ¶ 24 ("Finally, appellant also claims that the trial court failed to properly inform him about the consequences of violating post-release control, causing him to enter a guilty plea without full knowledge of all the potential penalties he was subject to, in violation of Crim.R. 11.  [T]he record indicates that appellant was ultimately never subjected to post-release control. * * *  Thus, this final assignment of error is moot[.]").  Consequently, our analysis will focus solely on the trial court's failure to advise Rogers of the mandatory fine on Count 2.

be knowingly, intelligently, and voluntarily made. *State v. Smith*, 12th Dist. Warren Nos. CA2019-10-113 and CA2019-11-121, 2020-Ohio-3074, ¶ 7. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States and Ohio Constitutions. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, ¶ 22. To ensure that a defendant's guilty plea is knowingly, intelligently, and voluntarily made, the trial court must engage the defendant in a plea colloquy pursuant to Crim.R. 11(C). Specifically, the court must notify the defendant of the constitutional rights set forth in Crim.R. 11(C)(2)(c) and make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require. *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 11.

{¶ 12} As pertinent here is Crim.R. 11(C)(2)(a), which provides:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> Determining that the defendant is making the plea voluntarily, *with understanding* of the nature of the charges and *of the maximum penalty involved*, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(Emphasis added.)

{¶ 13} The term "maximum penalty" refers to "[t]he heaviest punishment permitted by law." Black's Law Dictionary 1314 (10th Ed.2014). "Accordingly, the plea is the defendant's response to a charge filed alleging an offense, and the maximum penalty is the heaviest punishment prescribed by statute for that offense." *Bishop*, 2018-Ohio-5132 at ¶ 42 (Kennedy, J., dissenting). "Crim.R. 11(C)(2)(a) therefore requires the trial court to advise the defendant of the maximum penalty for each of the charges that the accused is resolving with the plea." *Id.* Because Rogers was pleading guilty to Count 2, a second-degree felony offense, a $7,500 fine was a mandatory element of his sentence pursuant to R.C.

- 4 -

2925.03(D)(1) and 2929.18(B)(1). *See State v. Johnson*, 5th Dist. Ashland No. 16-COA-010, 2017-Ohio-577; *State v. Luciano*, 6th Dist. Wood No. WD-14-023, 2015-Ohio-1264. It was therefore a component of the maximum penalty under Crim.R. 11(C)(2)(a).

{¶ 14} Pursuant to Crim.R. 11(C)(2), a trial court's determination that a defendant entering a guilty plea understands the maximum penalty involved must precede the court's acceptance of the plea. This is accomplished by the trial court "addressing the defendant personally." Neither post-colloquy events nor a plea form signed by a defendant are relevant in reviewing whether a trial court has complied with Crim.R. 11(C)(2). The trial court's failure to advise Rogers of the mandatory fine during the plea colloquy does not comply with the requirement of Crim.R. 11(C)(2)(a) that a trial court "first" determine a defendant's understanding of the maximum penalty before accepting the plea. Neither does Rogers' mere execution of the plea form satisfy the requirement of Crim.R. 11(C)(2)(a) that the trial court "personally address" a defendant to determine that the plea is entered with an understanding of the maximum penalty involved.

{¶ 15} We note that Rogers and the state both discuss whether the trial court *substantially* complied with Crim.R. 11(C)(2) during the plea colloquy. In particular, the state cites a case for the proposition that a trial court's acceptance of a guilty plea without advising the defendant that a fine could be imposed constitutes substantial compliance with Crim.R. 11(C)(2)(a) where the defendant signs a plea agreement before entering his guilty plea that informs him of the fine. *See State v. Mohr*, 3d Dist. Van Wert No. 15-98-05, 1999 Ohio App. LEXIS 4299 (Sept. 16, 1999). This reflects the law that was applicable at the time the parties filed their briefs. However, a recent decision of the Ohio Supreme Court reveals that whether a trial court substantially complies with Crim.R. 11(C)(2) is no longer part of the analysis in reviewing a trial court's plea colloquy. *See State v. Dangler*, Slip Opinion No. 2020-Ohio-2765.

{¶ 16} In *Dangler*, the supreme court once again addressed a trial court's compliance with Crim.R. 11(C) and how best to review a trial court's plea colloquy to ensure that a defendant's plea is knowing and voluntary. The supreme court reiterated that "[a]side from * * * two exceptions, the traditional rule continues to apply: a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16. "The test for prejudice is whether the plea would have otherwise been made." *Id.* A showing of prejudice is, however, excepted in two instances, (1) "[w]hen a trial court fails to explain the constitutional rights [set forth in Crim.R. 11(C)(2)(c)] that a defendant waives by pleading guilty or no contest," and (2) as a result of "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C)[.]" (Emphasis sic.) *Id.* at ¶ 14-15.

{¶ 17} Noting that its caselaw has "muddled" the analysis that should apply when reviewing a defendant's guilty or no contest plea "by suggesting different tiers of compliance with the rule" such as "partial" or "substantial" compliance, the supreme court then set forth the following "inquiry": "Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the trial court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Dangler*, 2020-Ohio-2765 at ¶ 17.

{¶ 18} We recently addressed what constitutes a trial court's "complete failure to comply" with Crim.R. 11 as the supreme court has never explicitly defined the term. *See State v. Fabian*, 12th Dist. Warren No. CA2019-10-119, 2020-Ohio-3926. Upon reviewing the supreme court's decisions in *Dangler* and *Sarkozy*, we found that

> It is plain that a complete failure to comply with Crim.R. 11(C) may involve something less than a failure to advise of all the notifications enumerated in Crim. R. 11(C)(2)(a). *Sarkozy*

makes this clear as the supreme court found a complete failure to comply even though the trial court did advise about the prison terms involved. The *Sarkozy* holding of a complete failure to comply was founded upon the trial court's failure to provide any advice concerning a distinct component of the maximum penalty, i.e., postrelease control, during the plea colloquy. The supreme court hinted that *Sarkozy* might have been decided differently if the trial court had provided at least some advice concerning postrelease control during the plea colloquy: "The trial court did not merely misinform Sarkozy about the length of his term of postrelease control. Nor did the court merely misinform him as to whether postrelease control was mandatory or discretionary. Rather, the court failed to mention postrelease control at all during the plea colloquy." By contrast, *Dangler* found there was not a complete failure to comply where a trial court provided incomplete advice concerning a distinct component of the maximum penalty (i.e., sex offender registration and notification requirements and duties).

*Fabian* at ¶ 19, quoting *Sarkozy*, 2008-Ohio-509 at ¶ 4.

{¶ 19} A criminal sentence consists of several distinct components, including a prison sentence, a fine, sex offender registration and notification requirements and duties, and postrelease control.[2] "The upshot of *Sarkozy* and *Dangler* is that a trial court's total failure to inform a defendant of a distinct component of the maximum penalty during a plea colloquy constitutes a complete failure to comply with Crim.R. 11(C)(2)(a), thereby requiring the vacation of the defendant's guilty or no contest plea." *Fabian* at ¶ 20. "Or stated differently, a complete failure to comply with Crim.R. 11(C)(2)(a) involves a trial court's complete omission in advising about a distinct component of the maximum penalty. By contrast, a trial court's mention of a component of the maximum penalty during a plea colloquy, albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a)." *Id.*

{¶ 20} At issue is whether the trial court complied with Crim.R. 11(C)(2)(a) when it

---

2. In addition to the sex offender registration and notification ("SORN") requirements, there are also registries for violent offenders pursuant to R.C. 2903.43 and for those convicted of arson pursuant to R.C. 2909.14. However, unlike the SORN requirements under the Adam Walsh Act, the Ohio Supreme Court has never determined that these other criminal statutory registration and notification requirements are punitive.

did not inform Rogers it would impose a mandatory fine of $7,500 on Count 2 before accepting his guilty plea. Applying the *Dangler* three-question inquiry, we find that Rogers' guilty plea must be vacated.

{¶ 21} As stated above, the $7,500 fine was a mandatory element of Rogers' sentence on Count 2 and a component of the maximum penalty pursuant to Crim.R. 11(C)(2)(a). Because the trial court did not inform Rogers of this mandatory fine before he entered his plea, the trial court did not comply with Crim.R. 11(C)(2)(a), thereby answering the first question in the negative.

{¶ 22} Because "[t]he maximum-penalty advisement is not a constitutional requirement," the second question asks us to determine whether the trial court's failure to advise Rogers of the mandatory fine under Crim.R. 11(C)(2)(a) constituted "a trial court's complete failure to comply with a portion of Crim.R. 11(C)" pursuant to the second exception to the prejudice requirement. *Dangler*, 2020-Ohio-2765 at ¶ 15, 23.

{¶ 23} As discussed above, pursuant to *Sarkozy/Dangler,* the failure of a trial court to provide any advice concerning a distinct component of the maximum penalty during a plea colloquy is a complete failure to comply with Crim.R. 11(C)(2)(a). As was the case in *Sarkozy*, while the trial court advised Rogers of the prison terms related to the offenses to which he was pleading guilty, it did not inform Rogers that the mandatory fine of $7,500 would be part of his sentence on Count 2 before accepting his plea. The trial court did not simply misinform Rogers about the fine, such as the amount or whether it was mandatory or discretionary. Rather, the court made no mention of the fine during the plea colloquy. Consequently, the trial court's total failure to inform Rogers of the mandatory $7,500 fine, which was a part of the maximum penalty, before it accepted the guilty plea constituted "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C)" pursuant to the second exception to the prejudice requirement. (Emphasis sic.) *Sarkozy*, 2008-Ohio-509

- 8 -

at ¶ 22.

{¶ 24} Having answered the second question of *Dangler* in the affirmative, no showing of prejudice is required and we therefore do not reach the third question. Considering the favorable plea deal Rogers negotiated, his motion to waive the mandatory fine filed on the day of the plea and sentencing hearings, and defense counsel informing the trial court of the filing of the motion at the beginning of the sentencing hearing, the record does not suggest that Rogers was prejudiced by the trial court's failure to advise him of the mandatory fine during the plea colloquy, in the sense he would not otherwise have entered the plea. Nevertheless, the three-question inquiry adopted by the Ohio Supreme Court in *Dangler* does not allow a reviewing court to address whether a defendant was prejudiced when a trial court either fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) or completely fails to comply with a portion of Crim.R. 11(C). *Dangler*, 2020-Ohio-2765 at ¶ 14-17. We are bound by and constrained to follow the decisions of the Ohio Supreme Court. *State v. Sheets*, 12th Dist. Clermont No. CA2006-04-032, 2007-Ohio-1799, ¶ 16.

{¶ 25} The record further suggests that Rogers was aware he faced a mandatory $7,500 fine based upon the plea form he signed which plainly indicated a mandatory fine of $7,500 on Count 2. However, while "[a] written acknowledgment of a guilty plea and a waiver of trial rights executed by an accused can, in some circumstances, reconcile ambiguities in the oral colloquy that Crim.R. 11(C) prescribes, * * * the writing does not substitute for an oral exchange when it is wholly omitted." *State v. Dixon*, 2d Dist. Clark No. 01CA17, 2001 Ohio App. LEXIS 5930, *7 (Dec. 28, 2001). "Crim.R. 11(C) requires that form of exchange to insure that the defendant makes a voluntary and intelligent decision whether to plead guilty." *Id.* "This court examines compliance with Crim.R. 11 by examining the trial court's communication to the defendant, not the defendant's subjective

understanding of his rights." *State v. Gipson*, 1st Dist. Hamilton No. C-970891, 1998 Ohio App. LEXIS 4687, *9-10 (Sept. 30, 1998).

{¶ 26} In light of all of the foregoing, we find that the trial court completely failed to comply with Crim.R. 11(C)(2)(a) and Rogers' guilty plea was not knowingly, intelligently, and voluntarily made. Rogers' first assignment of error is well-taken and sustained.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT IMPROPERLY PRESUMED THAT OHIO REVISED CODE 2967.271 IS CONSTITUTIONAL.

{¶ 29} Following his guilty plea, Rogers was sentenced to prison pursuant to R.C. 2967.271. This statutory provision is part of the Reagan Tokes Law, Am. Sub. S.B. No. 201, 2018 Ohio Laws 157, which took effect on March 22, 2019. Rogers challenges the constitutionality of R.C. 2967.271, arguing it violates the separation of powers doctrine and the Due Process Clauses of the United States and Ohio Constitutions. However, based upon our resolution of Rogers' first assignment of error, his second assignment of error is moot.[3]

{¶ 30} Rogers' conviction and sentence for aggravated drug trafficking and the accompanying forfeiture specification, having weapons while under disability, and cocaine possession are hereby reversed and his plea to those offenses is vacated. This matter is remanded to the trial court for further proceedings consistent with law and in accordance with this opinion.

HENDRICKSON, P.J., concurs.

PIPER, J., dissents.

---

3. This court recently rejected the same arguments and specifically found that R.C. 2967.271 is constitutional in *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837.

**PIPER, J., dissenting.**

{¶ 31} A trial court's lack of explaining the existence of a fine (Rogers already knew about) when addressing the maximum penalty does not represent a complete failure. Rogers referenced the fine in a motion filed prior to his plea, and again acknowledged the fine in his plea form. Additionally, Rogers has not demonstrated any prejudice. Therefore, I must respectfully dissent from the opinion of my colleagues.

{¶ 32} As I recently noted in a similar dissent in *State v. Fabian*, 12th Dist. Warren No. CA2019-10-119, 2020-Ohio-3926 (Piper, J., dissenting), the *Dangler* court was clear that a defendant is not entitled to have his or her plea vacated unless the defendant can demonstrate prejudice by a failure of the trial court to comply with the provisions of Crim.R. 11(C). The test for prejudice is whether the plea would have otherwise been made. *Dangler*. The only exceptions noted within *Dangler* include a trial court's *complete* failure to comply with a portion of Crim.R. 11(C), or a trial court's failure to explain the constitutional rights that a defendant waives by pleading guilty or no contest. *Id.* at ¶ 14-15.

{¶ 33} The *Dangler* Court simplified appellate review of guilty pleas by elucidating that prior caselaw quantifying the degree of error was problematic and unnecessary. "Unfortunately, our caselaw has muddled [the] analysis by suggesting different tiers of compliance with the rule." *Id.* at ¶ 17. The exceptions to the prejudice component in the criminal-plea context are limited. *Id.* at ¶ 14, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio 3748, ¶ 31; *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, syllabus.

{¶ 34} The *Dangler* Court addressed the purpose of Crim.R. 11, and that the court had "been grappling with how best to review a trial court's colloquy to ensure that a defendant's plea is knowing and voluntary." *Id.* at ¶ 12. The court specifically addressed

- 11 -

that "in keeping with that objective, our focus in reviewing pleas has not been on whether the trial judge has incanted the precise verbiage of the rule, but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Id.*

{¶ 35} Keeping the focus on whether the facts and circumstances of a particular plea demonstrate that the plea was voluntarily made, the court posed three specific questions that an appellate court should ask and answer when reviewing a plea. "The questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden? *Id.* at ¶ 17.

{¶ 36} The majority opinion suggests that *any* lack of a complete explanation by the trial court during its plea colloquy --no matter how inconsequential or even if demonstratively already known by the defendant -- results in a "complete failure." Such precedent muddles the simplicity offered to reviewing courts by *Dangler* and would require a reversal of pleas that would not have been reversed using pre-*Dangler* jurisprudence. *See State v. Mohr*, 3d Dist. Van Wert No. 15-98-05, 1999 Ohio App. LEXIS 4299 (Sept. 1, 1999) (finding substantial compliance with Crim.R. 11 requirements despite trial court's failure to fully inform Mohr of fine during colloquy); *State v. Mackey*, 8th Dist. Cuyahoga No. 99390, 2013-Ohio-4698 (finding substantial compliance with Crim.R. 11[C] requirements despite trial court's failure to fully discuss imposition of a fine); and *State v. Martin*, 7th Dist. Mahoning No. 11 MA 2, 2011-Ohio-6408, ¶ 18 (finding substantial compliance despite trial court's error in discussing the fine where "the advisement as a whole constituted substantial compliance").

{¶ 37} Prior to *Dangler*, if the only error were the lack of referencing a fine, the

colloquy could still have been considered in "substantial compliance" with Crim.R. 11(C). Yet, the majority's interpretation of *Dangler* now compels such an error to be considered a "complete failure" and requires automatic reversal without any prejudice to the defendant. It is this result that requires my dissent.[4]

{¶ 38} The instructions set forth in *Dangler* do not render a guilty plea involuntary upon the slightest mistake or omission of the trial court. The *Dangler* Court made the analysis straightforward. *Dangler* highlighted the need for an appellant to demonstrate that he or she was prejudiced by an error of the trial court in accepting the plea. The test for prejudice is whether the trial court's error was of a nature that absent the error, the defendant would not have entered his or her plea. *Dangler* requires prejudice as a rule unless one of the two exceptions apply.    xis

{¶ 39} The exceptions to the requirement of prejudice are two limited, very narrow, well-defined instances. Either exception, if applicable, would render a plea involuntary. First, if a defendant was not informed of a specific constitutional right, then that right could not have been voluntarily waived. Secondly, if a trial court *completely* fails to address an aspect of Crim.R. 11(C), its colloquy can be deemed a complete failure, which is a significant failure such that no prejudice need be alleged. However, not all omissions or lacking explanations regarding nonconstitutional rights equate to a *complete* failure in regard to Crim.R. 11(C)(2)(a) or (b).

{¶ 40} In *Dangler*, the Ohio Supreme Court reversed a decision of the appellate court that had determined the trial court completely failed to address the maximum penalty when

---

4. The majority in its first footnote, declines to address Rogers' argument that the trial court also did not tell Rogers about additional fines, nor the penalty of a driver's license suspension, because those penalties were never actually imposed. Presumably, this is not addressed in the foregoing opinion because Rogers was not prejudiced by penalties not imposed even though a Crim.R. 11 colloquy requires the trial court to articulate the maximum penalty. Pursuant to the majority's analysis, however, the complete absence of their inclusion in the Crim.R. 11 colloquy would be a "complete failure" despite the lack of prejudice.

it failed to fully address sexual offender classification requirements. Dangler pled no contest to sexual battery and the trial court explained during its plea colloquy that Dangler would be classified as a Tier III sex offender and would be required to register for the rest of his life. The trial court, however, omitted discussion of additional requirements of the classification, including "(1) the registration requirements that went with his classification (verifying his address in-person every 90 days for the rest of his life with the sheriff of any county in which he resides, works, or attends school), (2) the residency restrictions applicable to his classification, and (3) the community-notification process by which members of the public would be made aware of his status as a sex offender." *Id.* at ¶ 6.

{¶ 41} On appeal, Dangler argued the omissions were significant. The appellate court agreed and concluded that the registration and in-person verification requirements, community-notification provisions, and residency restrictions were punitive sanctions, each constituting a separate penalty. The appellate court determined that the trial court was required to address each requirement in order to comply with Crim.R. 11(C)(2)(a)'s maximum-penalty advisement.

{¶ 42} The *Dangler* Court disagreed and reversed the appellate court's decision, finding that the trial court's colloquy, even when omitting portions of the maximum sentence, was *not* a complete failure. While the court recognized that the trial court could have done more, it did not find that all omissions constituted a complete failure.

> The trial court could have gone further than it did and reviewed with Dangler the entirety of his obligations and burdens under the sex-offender-classification scheme. And we encourage trial courts to be thorough in reviewing consequences of a defendant's decision to enter a plea, including those stemming from classification as a sex offender: the duty to register and provide in-person verification, the community-notification provisions, and the residency restrictions.
>
> But the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a), and there is nothing in the record to support a

conclusion that Dangler would not have entered his plea had the trial court been more detailed in its explanation.

*Id.* at ¶ 25-26.

{¶ 43} The same principles apply to the case sub judice. While the trial court did not address the required fine during its colloquy, it did make a determination according to Crim.R. 11(C)(2)(a) that Rogers' plea was voluntarily made after advising Rogers of the penalty involved. In light of *Dangler*, I do not view a lack of reference to the fine as a *complete failure* on the trial court's part. Just as the *Dangler* court did not view the trial court's failure to explain the complete penalties relating to a sexual offender classification as a complete failure, the trial court's explanation of the maximum penalty failing to reference the fine was also not a complete failure. As was stated in *Dangler*, it is equally true here: "consequently neither of this court's exceptions to the prejudice requirement apply * * *." *Id.* at ¶ 23.

{¶ 44} The trial court should have mentioned the monetary sanction, yet Rogers is only entitled to have his conviction vacated if he can demonstrate prejudice; that he would not have entered the plea but for the incomplete explanation. Upon a review of the record, no such prejudice can be demonstrated. In exchange for Rogers' guilty plea, the state dismissed three felony offenses, the misdemeanor offense, and the firearm specifications and amended some charges, thus very significantly reducing Rogers' potential maximum sentence. The trial court explained Rogers' maximum prison sentence and Rogers expressed no confusion or lack of understanding regarding the possible maximum sentence. The entirety of the record demonstrates Rogers was aware of the mandatory fine, as he addressed the fine himself in a motion filed with the court *prior* to his plea, and the plea form also references the mandatory fine. Thus, there is no indication in the record that Rogers would not have pled guilty had the trial court explained the $7,500 fine.

{¶ 45} I would answer the Ohio Supreme Court's three questions specifically given us in *Dangler* at ¶ 17 as such: (1) the trial court did not fully comply with Crim.R. 11 because it failed to advise Rogers of a mandatory fine that could be considered part of the maximum sentence. (2) The trial court's failure is not of the type that excuses the burden of demonstrating prejudice. (3) Rogers has not met his burden to show he was prejudiced by the court's failure. Therefore, I would find that Rogers' plea was voluntarily given and would overrule his assignment of error. Thus, I respectfully dissent from the majority's decision on Rogers' first assignment of error.

{¶ 46} I would find Rogers' second assignment of error, in which he challenges the constitutionality of indeterminate sentencing, meritless. Rogers challenges the trial court's presumption at sentencing that the statute was constitutional. However, a court rightfully presumes the constitutionality of a statute unless the opponent can prove the statute's unconstitutionality beyond a reasonable doubt. *Wilson v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367. Moreover, this court has already determined that the sentencing statute is constitutional. *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837. Thus, I would overrule Rogers' second assignment of error.

{¶ 47} Based on my inability to join my colleagues in sustaining Rogers' first assignment of error, I dissent in the disposition of this case.